12-13-2012-70-72 Groner v. Department of Veterans Affairs Mr. Carpenter May it please the court, Kenneth Carpenter appearing on behalf of William Groner. The issue in this matter, your honor, is one of statutory interpretation, specifically the meaning of the language in 38 U.S.C. 101-24-c-i. This provision expressly includes the term active military or air service to include any period of inactive duty training during which an individual concerned was disabled from either an acute myocardial infarction, a cardiac arrest, or a cerebral accident occurring during such training. The board determined that the veteran did not have an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident, right? I'm sorry, yeah? The board determined that this didn't happen. There wasn't a myocardial infarction, a cardiac arrest, or a cerebrovascular accident, right? That's what the board determined, that's correct. So what difference does it make that the veterans court might have said something about the law that isn't quite right? Because even under your version of the law, you have an explicit finding against you by the board. Well the question is whether or not the board correctly applied the law to the facts. Well it doesn't depend, they said flat out this didn't happen. They made a finding of fact. I understand that that was the finding of fact that they made. Which we have no ability to review. To review, absolutely not. What you're reviewing here is what the veterans court decided. And what the veterans court decided is that this case was controlled by the preceding subparagraph of small i, which deals with injuries only and imposes an express limitation on the ability for a person on inactive duty for training to receive compensation for anything other than... Even if we were to hypothetically agree with what you say there, what you're asking us is what? To vacate and send it back? Given that there's already been a finding that there was no heart attack in this case in 1981, what difference does any of this make? Your client cannot prevail given that finding and we can't review that finding. No your honor, but the court below can review that finding. And the court below should have reviewed that finding under the correct interpretation of the statute. Because the question is whether or not a heart disease, which there was clear evidence in the record that Mr. Grosvenor suffered from, does or does not fall within the parameters set out by this provision of the regulation. And whether or not the board made a clearly erroneous finding of fact is clearly under the jurisdiction of the veterans court. The veterans court didn't reach that question because the veterans court relied upon the wrong provision of the statute to exclude the plain language of Congress' amendment in 2000. Congress clearly provided for an exception that provided for two types of diseases. And the question is whether or not those diseases are limited to a myocardial infarction, a cardiac arrest, or they can include the broader disease of heart disease for which there was clear evidence had its incurrence during this veteran's period of inactive duty for training. Under the correct interpretation of the statute, Mr. Grosvenor would have been able to argue to the court below that the finding of fact that Judge Dyke referred to was in fact clearly erroneous. Did he? Did he? Did he? Did Mr. Grosvenor below? Yeah. No, he did not. I'm afraid I have to concede that issue. But I'm not here based upon what counsel before the lower court did, but what the lower court did in rendering its decision. And that decision is what's appealed to this court. And that decision relied upon a veterans court decision and a general counsel's opinion that predated the amendment. And clearly nullified both the general counsel's opinion and the prior case law in Brooks. The language of the statute clearly encompasses diseases and is not limited to injury only, which is what the determination was made by the court below. And that determination was a misinterpretation of the statute. And under the correct interpretation of the statute, yes, Mr. Grosvenor, when the matter gets hopefully returned by this court, we'll have an opportunity to present that issue to the veterans court based upon the correct interpretation of this statute. To me, the statute is clear on its face. I agree there is a factual question that needs to be resolved, but that's beyond the jurisdiction of this court to resolve that factual question. And it clearly was within the jurisdiction of the veterans court to have addressed whether or not that board finding was or was not clearly erroneous under this provision of the statute. What was the argument that the veteran made to the veterans court as a basis for reversing the board? As I understand it, the argument made was that what occurred while on inactive duty for training constituted an injury under the small i provision, and therefore should have been considered under small i as opposed to double i. Really, Your Honor, unless there's any further questions, that clearly frames the argument as presented by Mr. Grosvenor, I believe. Okay, let's hear from the secretary. Ms. Riker. May it please the court. Your Honor, this appeal should be dismissed for lack of jurisdiction because there is no dispute that 38 U.S.C. 101 C2 provides a basis for service connection for an individual who suffered from a heart attack during inactive duty training. But the veterans court seems to have gotten it wrong in terms of articulating the correct law. Your Honor, the veterans court implicitly relied on C2 on page... Implicitly? But, I mean, they keep saying you've got to show an injury. The only reason why the veterans court states that you must show an injury is because that was the argument that was made to them upon appeal from the board's decision. There was no reason for it to go into detail in discussing C2 because that argument was not presented to them. The board found that... They seem to agree with Mr. Carpenter that the CABC did not review the board's finding with respect to C2 or the two provisions, right? I think it is implicit from their decision that when they affirmed the board's decision, they affirmed the board's finding that Mr. Groner, had he suffered a heart attack during inactive duty service, could have been given service connection. But, in fact, that was not the facts presented in this case. So the veterans court properly affirmed that finding. Now, because Mr. Groner only argued... He didn't dispute that finding and he only argued that he should have been entitled to service connection pursuant to C1, the veterans court focused its discussion based upon that section of the law. Wouldn't that have been correct, that that's what he's entitled to? Service connection under C1? Yes. No, because Mr. Groner did not incur an injury during inactive duty training and that... That's the question of fact. He certainly had a reaction of some sort. And isn't that his position, the question of fact that we don't review that that injury some years later was manifested in serious consequence? Well, there is a question of fact and the board found that the run or the symptoms he experienced in 1981 was not an injury and that is supported by an opinion from Mr. Groner's medical expert, Dr. Cain, who said that those symptoms were directly related to his heart disease. That's C2, that he didn't have a heart attack or myocardial infarction. Nobody denied that he had some serious reaction to the physical stress. Correct. No one is denying that he did have symptoms. However, they did rule out that it was not a heart attack at that time. Dr. Cain, Mr. Groner's medical expert, even stated as such. But that's the problem, isn't it? That takes us to C1? Doesn't require a heart attack. Correct. So Congress has distinguished between injury-caused and disease-caused disabilities. And what the board found is that heart disease or a non-traumatic heart attack, meaning one that does occur because of blockage in arteries or pre-existing heart disease, is not an injury. The board noted that typically exertion cannot damage a normal heart. So injury is defined... Mr. Groner is not arguing C1 on appeal, right? Correct. He is not arguing C1 on appeal. In fact, in his opening brief, he does concede that a heart attack is not an injury but a disease process. And the problem is here, we don't dispute that Mr. Groner does now have heart disease or later was found to have heart disease. But for service connection that's based on periods of inactive duty training, disease generally does not qualify you. You do have to specifically have either a heart attack or a stroke during the inactive duty training. And that's the problem here, is that Mr. Groner did not have a heart attack or a stroke during inactive duty training, and therefore there is no basis for him to have service connection for his current heart disease. Does the board have authority to examine, I mean does the Veterans Court have authority to examine board findings on appeal, even though those findings have been argued to be clearly erroneous? Excuse me, what was the last part of the question? Does the Veterans Court on appeal have the authority to review board findings of fact, even though those findings of fact have not been argued by counsel to be clearly erroneous? I believe that the court could find something that was clearly erroneous, however... Even though it wasn't argued? Right. Does it do that? In this case? No, not in this case, just generally. I'm not sure with what type of frequency it may do that, Your Honor, but... Occasionally it doesn't. I believe it does, occasionally. I believe that the court could look at anything that the board, but typically due to a waiver in its jurisdiction, it probably would not go into detail unless something was very clearly on its face erroneous. I would think with a duty to assist and with the entire culture that's supposed to be reflected in this judicial structure for veterans, that if there is a basis for relief that the veteran, for whatever reason at that level, whether unrepresented or some other reason, doesn't mention to say that you can't look at it, I'd be very surprised if that were the rule. Right, and I do not believe that that is the rule, Your Honor. I believe, as I stated, that they can consider any part of the decision by the board that it would have deemed to be erroneous. And that's what you're telling us they did implicitly? Is that your position? Yes. Well, and explicitly in affirming the decision of the board that it recognized clearly on page JA2, it set forth the standard for providing service connection. It clearly recognized the two distinct bases for service connection. And, again, just because it was not argued and there was really no reason to discuss it because the board's findings were clear and there's no dispute that the language of the statute is unambiguous, there's no point to go into a detailed discussion of that. If the court has no further questions, please. Okay. Thank you, Ms. Wagner. Mr. Carpenter. I think the only thing I want to respond to is the notion that somehow the court had implicitly affirmed the board's finding. There is a mention at the end of the second paragraph that notes the board's finding. There is no indication in the court's decision as written that indicates that it affirmed anything until the conclusion, and it simply generically said that it affirmed the board's decision. The final paragraph deals with the Secretary's response to Mr. Groner's second argument about the VA General Counsel's opinion, 86-90. And the only thing that is referenced there in relationship to the relevant statute is to italicize it and highlight it and refer to the Secretary's response. There simply is no indication that the court in any way implicitly relied upon C-2, which is the controlling statute here. Unless there's further questions. Thank you very much. Okay. Thank you, Mr. Carpenter. This hearing, the case is taken under submission. That concludes the argued cases.